UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Theresa Wanjiku MWICIGI and<br>Kevin Ngugi RUHIU,<br><br>    Plaintiffs,<br><br>vs.<br><br>Joann P. Sassone,<br>in her official capacity as<br>Acting Field Office Director for Boston Field Office of<br>U.S. Citizen and Immigration Services;<br><br>Denis RIORDAN,<br>in his official capacity as<br>District Director of U.S. Citizen and Immigration<br>Services for District 1;<br><br>Ur M. JARROU,<br>in her official capacity as<br>Director of U.S. Citizenship and Immigration Services;<br><br>Alejandro MAYORKAS,<br>in his official capacity as<br>Secretary of the U.S. Department of Homeland Security;<br><br>and<br><br>Merrick GARLAND,<br>in his official capacity as<br>Attorney General of the United States;<br><br>    Defendants. | Civil Action No: _____<br><br>Case No: _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF
AGENCY DECISION UNDER THE ADMINISTRATIVE PROCEDURES ACT**

NOW COMES Plaintiffs Theresa Wanjiku Mwicigi ("Plaintiff" or "Ms. Mwicigi") and Kevin Ngugi Ruhiu ("Plaintiff" or "Mr. Ruhiu") and complain of the defendants as follows:

## NATURE OF THE ACTION

1. Plaintiffs Ms. Mwicigi and Mr. Ruhiu have been married since May 17, 2018. Mr. Ruhiu, a naturalized United States Citizen, concurrently filed an I-130 Petition for Alien Relative ("I-130 Petition") and an I-485 Application to Register Permanent Residence or Adjust Status ("I-485 Application") with United States Citizen and Immigration Services ("USCIS") on behalf of his wife, Ms. Mwicigi on June 25, 2018.

2. On August 3, 2021, USCIS denied the I-130 Petition and the I-485 Application, providing that Plaintiffs had not submitted sufficient proof to establish, by a preponderance of the evidence, that the marriage was legally valid and bona fide at its inception.

3. Defendant's denial of the Plaintiffs' I-130 Petition was in violation of the Administrative Procedures Act as it was arbitrary and capricious. Therefore, Plaintiffs' respectfully request that Defendants' Denial be reversed.

## JURISDICTION

4. This is an appeal from the August 3, 2021 decision of the Acting Field Office Director of the Boston Field Office of the USCIS denying the I-130 Petition filed by Mr. Ruhiu, which was filed in accordance with INA § 204 on behalf of his spouse, Ms. Mwicigi.

5. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 2201 (Declaratory Judgment Act).

6. The Administrative Procedures Act (APA) provides a cause of action and allows for a waiver of sovereign immunity. 5 U.S.C. § 702.

## STANDING

7. The APA provides the right of review for any individual "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Defendants' improper denial of Plaintiff's I-130 Petition has adversely affected her ability to obtain LPR status in the United States. Plaintiffs thus falls within APA's standing provisions.

## VENUE

8. Venue lies in the District of Massachusetts because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Massachusetts. 28 U.S.C. § 1391(b). Moreover, Massachusetts is the judicial district in which the Plaintiffs reside and the Defendants routinely conduct business. 28 U.S.C. § 1391(e).

## PARTIES

9. Plaintiff Ms. Mwicigi is a native and citizen of Kenya and is the beneficiary of the I-130 Petition filed by her United States Citizen spouse, Mr. Ruhiu.

10. Plaintiff Mr. Ruhiu is a naturalized citizen of the United States and is the petitioner who filed the 2019 I-130 Petition on his wife's behalf.

11. Defendant Joann P. Sassone is sued in her official capacity as the Acting Field Office Director of the USCIS for the Boston Field Office. In this capacity, she is responsible for the adjudication of the petition the Plaintiffs filed.

12. Defendant Denis Riordan is sued in his official capacity as the District Director of USCIS's Boston District Office. He has the responsibility for the adjudication of immigration applications and petitions, such as the one filed by Mr. Ruhiu on behalf of Ms. Mwicigi.

13. Defendant Ur. M Jarrou is sued in her official capacity as the Director of USCIS. She is charged with supervisory authority over all operations of USCIS. In this capacity, she is responsible for the adjudication of the petition the Plaintiffs filed.

14. Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of the Department of Homeland Security ("DHS"). In this capacity, he is responsible for, among other things, administering and enforcing the nation's immigration laws. 6 U.S.C. § 251. He is also authorized to delegate such powers and authorities to subordinate employees of DHS, including, but not limited to, USCIS.

15. Defendant Merrick Garland is sued in his official capacity as the Attorney General of the United States, the head officer in the Department of Justice ("DOJ"). He is an official generally charged with supervisory authority over all operations of the DOJ under 28 C.F.R. § 0.5. In this capacity, he has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103.

## FACTS

16. Ms. Mwicigi arrived in the United States on a B2 Visitor's Visa on September 14, 1999, when she was only thirteen years old. She stayed with her paternal half-sister, Lucy Mwicigi, and Lucy's husband in New York. At some point, Lucy had applied for, and received, a social security card for Ms. Mwicigi. Ms. Mwicigi eventually moved to Boston, Massachusetts and later attended Harvard University from 2008 to 2013. She spent one semester attending Boston College in 2010, during which time she began volunteering at a homeless shelter.

17. During the course of Ms. Mwicigi's volunteer work at the Pine Street Inn, Ms. Mwicigi met and befriended Angie Ruhiu. She also met Angie's mother, Margate Ruhiu ("Mrs. Ruhiu") and was later invited to Mrs. Ruhiu's graduation celebration in the summer of 2017. At

the celebration, she met Angie's brother, Kevin Ruhiu. They began dating shortly thereafter. They realized that they both enjoyed cooking and followed many chefs on social media. Many of their dates involved going to different restaurants and food trucks in and around Boston, Massachusetts.

18. On December 27, 2017, Mr. Ruhiu proposed to Ms. Mwicigi and she accepted. They had bonded over the fact that they both came from the same tribe in Kenya, and had certain religious views about the marital relationship that they wanted to honor. Specifically, they did not want to live together until marriage.

19. On May 17, 2018, Ms. Mwicigi and Mr. Ruhiu married in a private ceremony in Boston, Massachusetts. They had wanted to celebrate their wedding with family, but because they had debts they wanted to pay first, they agreed to straighten out their finances and then celebrate the wedding. Mrs. Ruhiu was not invited to the wedding because it would not have been fair to invite Mr. Ruhiu's mother, but not Ms. Mwicigi's mother and inviting several guests would have only added to the expense they were trying to avoid.

20. Around the time of the wedding, Mr. Ruhiu moved into Ms. Mwicigi's apartment and they began commingling their finances.

21. Because they did not live together until the time of their marriage, many accounts were not prepared in both of their names. After the marriage, they set up a joint account at Citizen Bank. Ms. Mwicigi added Mr. Ruhiu as a beneficiary to her life insurance policy, which refused to allow her to designate Mr. Ruhiu until he was lawfully her spouse. They executed a renewed lease in both of their names for the apartment Ms. Mwicigi had been living in alone previously. They set up the utility accounts in both of their names. Mr. Ruhiu updated his address on his driver's license, with his employer who issued his tax forms and paychecks, his medical bills, his taxes.

22. On June 25, 2018, Mr. Ruhiu submitted an I-130 Petition on behalf of his wife, Ms. Mwicigi, and she concurrently filed her I-485 Application. With the I-130 Petition, the Plaintiffs submitted proof their claimed marital relationship, including:

-Copy of Marriage Certificate
-Copy of Petitioner's Naturalization Certificate
-Copies of Lease Term in Both Names
-Copies of Applicant's Life Insurance Listing Petitioner as Beneficiary
-Copy of Letter from Citizens Bank with Both Names
-American Express Activity Showing Petitioner and Beneficiary as Members
-Copies of MetLife Auto & Home Insurance under Both Names
-Copy of Xfinity Bill with Both Names
-Copy of AT&T Bill-Petitioner and Beneficiary
-3 Notarized Letters from Friends and Family to Attest Marriage in Good Faith and
-Wedding and Photos as a Couple.

23. The couple appeared for an interview with USCIS on November 21, 2018. During that interview, Ms. Mwicigi and Mr. Ruhiu had some minor inconsistencies in their testimony.

24. On February 3, 2021, USCIS issued a Notice of Intent to Deny ("NOID"), which explained that Ms. Mwicigi had not established the claimed relationship and USCIS believed the marriage was entered solely to evade the immigration laws of the United States.

25. In the NOID, USCIS listed several reasons for which it would base its denial, should the Plaintiffs not overcome them in their response. It concluded: "It appears that the documentary evidence was created for the sole purpose of providing evidence to attempt to establish a bona fide marital relationship for immigration purposes."

26. On April 20, 2021, Plaintiffs submitted their response ("NOID Response") to USCIS. In their response they included affidavits from each of Plaintiffs, and the following:

-Copy of Petitioner's Driver's License, May 2018-December 2020;
-Copy of Letter from Met Life Auto & Home Insurance, May 21 2018;
-Copy of Omaha Life Insurance Policy;
-Copy of Petitioner's 2018 Tax Returns, Married Filing Separately;
-Copy of Beneficiary's 2018 Tax Returns, Married Filing Separately;

-Copy of Petitioner's 2019 Tax Returns, Married Filing Separately;
-Copy of Beneficiary's 2019 Tax Returns, Married Filing Separately;
-Copy of Petitioner's 1099-HC Form, 2019;
-Copy of Beneficiary's 1099-HC Form, 2019;
-Copy of Petitioner's Amtrak Travel Tickets, November 22 2018;
-Copy of Beneficiary's Amtrak Travel Tickets, November 22 2018;
-Copy of Joint Amtrak Travel Itinerary and Tickets, April 21 2019;
-Copy of Petitioner's Amtrak Travel Tickets, November 28 2019;
-Copy of Beneficiary's Amtrak Travel Tickets, November 28 2019;
-Copy of Petitioner's 2018 Student Loan Interest Summary Dated January 16 2019;
-Copy of Petitioner's 2020 Interest Paid Statement Letter Dated January 8 2021;
-Copy of Joint Lease Agreement; September 2019-August 2020;
-Copy of Letter Addressed to Petitioner from the IRS, February 2021;
-Copy of Joint Xfinity Bills, May 2018-April 2021;
-Copy of Omaha Life Insurance Premium Notices, June 2020-2021;
-Copy of Petitioner's W-2 for Beacon Hill Staffing, 2020;
-Copy of Petitioner's W-2 for Apellis Pharmaceuticals, 2020;
-Copy of Beneficiary's W-2 for Biogen US Pacific LLC, 2020;
-Copy of Beneficiary's W-2 for Biogen MA INC, 2020;
-Copy of Petitioner's 2020 Tax Return, Married Filing Separately;
-Copy of Beneficiary's 2020 Tax Return, Married Filing Separately;
-Copy of Petitioner's 1095C Form, 2020;
-Copy of Beneficiary's 1095C Form, 2020;
-Copy of Petitioner's Partners Healthcare Bills, January 2020-June 2020;
-Copy of Metropolitan Property Insurance Declarations for June 2019-June 2021;
-Copy of Check Images from Joint Citizens Bank Account, June 2018-September 2018 and November 2018-February 2019;
-Copy of Petitioner's Summary of Health Plan Payments, December 2019-January 2020;
-Copy of Joint Citizens Bank Account Statements, May 2018-July 2018, August 2018-October 2018-August 2019, September 2019-December 2019, January 2019-August 2019, September 2019-August 2020, and September 2020-March 2021;
-Copy of Resubmission of American Express Portal, Submitted in June 2018;
-Copy of Joint American Express Bank Statements, July 2018-February 2021;
-Copy of Petitioner's Driver License Issued on March 2, 2021;
-Copy of Christmas Card Addressed to Beneficiary and Petitioner, 2018
-Copy of Christmas Card from Mercy Kimanthi Addressed to Beneficiary and Petitioner, 2020;
-Copy of Picture of Beneficiary's Degrees;
-Copy of Letters of Support; And
-Copy of Pictures of Beneficiary and Petitioner.

27. Despite all of the documentary proof submitted in response to the NOID, USCIS issued its Decision denying the I-130 Petition and I-485 Application on August 3, 2021. In the

denial, it outlines several reasons why the Plaintiffs had failed to establish the claimed marital relationship.

28. USCIS ignored the plentiful examples of documentary evidence that it had identified as positive evidence in support of showing the claimed marital relationship or the commingling of finances. Evidence identified as positive factors included: Mr. Ruhiu's 2018 driver's license and 2021 driver's license that listed the marital home as his address; a February 5, 2021 letter from the IRS addressed to Mr. Ruhiu at the marital address; statements from Partners Health and BlueCross BlueShield of Massachusetts sent to the marital home for Mr. Ruhiu's medical expenses; rental declarations from Metropolitan Property Insurance Company for April of 2019 and 2020 showing husband and wife had property insurance at the marital home; greeting cards and post-marked envelopes from family and friends sent to the marital address; copies of the lease listing both Plaintiffs at the marital address; Amtrack tickets showing trips taken together, and Eventbrite tickets showing events attended together.

29. USCIS asserted that all other evidence submitted in the I-130 Petition and the NOID Response was not sufficient to prove the bona fides of the marriage or the commingling of the finances.

30. Firstly, USCIS determined that Ms. Mwicigi lacked credibility because she had arrived on a visitor's visa in 1999 and overstayed the expiration. Her half-sister, with whom she had been staying, applied for and obtained a social security card for Ms. Mwicigi when she was a child. Ms. Mwicigi used that number to obtain an associate's and bachelor's degrees from Harvard University and work at Biogen. Though this information does not relate to whether the marriage was bona fide or not, USCIS concluded that it was relevant anyways.

31. Second, USCIS stated that the affidavits submitted in the NOID Response were only "afforded only marginal weight as evidence" because "simply going on the record, or testifying, without supporting documents is not sufficient to meet the burden of proof in immigration proceedings." However, Plaintiffs did submit documentary proof for every assertion that they could.

32. Specifically, Mr. Ruhiu could not recall the amount of his student loan payments at the interview, and he explained that Ms. Mwicigi handled all of the finances. In the NOID Response, they provided two end-of year statement summaries from Discover, detailing the interest he had paid for the annual year. Mr. Ruhiu testified that Ms. Mwicigi had two degrees from higher educations and Ms. Mwicigi testified at the interview that she had one degree from higher education. Ms. Mwicigi later clarified that because it was an associate's degree and she subsequently obtained a bachelor's degree, she understood the degrees to merge into one. She submitted photographs of her diplomas. Mr. Ruhiu testified that the rent payment was $1,100 per month but Ms. Mwicigi stated that the rent was $1,150. Later, he explained that he tended to think of numbers in rounded numbers and they provided copies of their lease showing that the rent was $1,150. The rest of the details could not be supported by documentary evidence, but their credible testimony should be afforded due weight. For example, Mr. Ruhiu never met Ms. Mwicigi's paternal half-sister because they had been estranged from one another since their father's death, which was in the year before Ms. Mwicigi met her husband. Ms. Mwicigi does not have documentation about the last time she had spoken with her half-sister.

33. Third, Plaintiffs had offered testimony about their marital relationship and how supportive Mr. Ruhiu and his family had been to Ms. Mwicigi after her breast cancer diagnosis in the NOID Response. Ms. Mwicigi also submitted a photo of Mr. Ruhiu facetiming her while she

was in the hospital receiving chemotherapy treatments, because due to COVID-19, Mr. Ruhiu was not allowed to visit her in the hospital. They had offered the evidence to explain how their relationship has grown stronger over the years, but did not deem it pertinent to submit her medical records because it would have demonstrated the validity of their relationship. USCIS wrote that Ms. Mwicigi "submitted no evidence to support this claim of a medical diagnosis" but in the same sentence proffered "nor is it clear how this medical diagnosis assists in establishing the claimed relationship." The lack of evidence, therefore, cannot be used to undermine Ms. Mwicigi's credibility when USCIS could not provide an explanation for how the evidence could have deemed relevant to its investigation.

34. USCIS also provided that the extensive photographs submitted did not "show a progression in the relationship." Ms. Mwicigi and Mr. Ruhiu specifically chose the forty photos that they submitted because they were taken at various points in their relationship. Some were from their relationship, some were from their wedding, some were from trips they had taken together, some were taken in masks during the COVID-19 pandemic, and one showed Ms. Mwicigi recently receiving chemotherapy treatments at the hospital.

35. Fourth, Mr. Ruhiu submitted two end-of-year statements from Discover for his Student Loans, one of which was addressed to his mother's address. USCIS commented "it is unclear why this document was addressed to your previous residence." The statements were prepared and sent to Mr. Ruhiu in preparation of filing taxes for the previous year. Accordingly, the statement from January 16, 2019 was for the calendar year 2018, which is the year he moved from his mother's residence into the marital home. As such, the statement is not sufficient to prove the couple did not live together during the 2018 year. In fact, Mr. Ruhiu filed, and submitted in the NOID Response, his 2018 taxes, which listed their marital home as his address.

36. Next, USCIS stated that the bills from Xfinity in both of their names, sent to their marital address, were "of little evidentiary value to proving a bona fide marriage" because utility service providers depend solely upon information from customers and do not investigate marriages. In total, Plaintiffs submitted thirty-four months of bills from Xfinity, from the date of the marriage to the date of their last submission. USCIS found that the bills were insufficient also because the bank statements did not show that each of the bills were paid. However, the bills itself show the date the previous bill was paid, indicating that for their entire marriage, they were current on their cable bills.

37. Sixth, USCIS declined to extend evidentiary value to Ms. Mwicigi's life insurance policy with United of Omaha Life Insurance. The Decision stated: "The various documents from United of Omaha Life Insurance are addressed to the beneficiary in regard to an insurance policy where she is the insured and the owner. These documents do not assist in establishing the claimed relationship." USCIS failed to consider that on June 1, 2018, less than two weeks after their wedding, she designated Mr. Ruhiu, her spouse, as the beneficiary of 100% of the proceeds.

38. USCIS also claimed that the three years of tax returns submitted in the I-130 Petition and NOID Response do not prove the claimed relationship because the Plaintiffs submitted only copies of their returns, rather than their IRS tax transcripts. Because the IRS does not verify the validity of marriages, the tax returns which list their marital address as their residence and indicate that they are married, filing separately, are not proof of the relationship, according to USCIS. Earlier in the Decision, USCIS credited Mr. Ruhiu for updating his address with the IRS when he received the letter acknowledging his Economic Impact Payment sent to the marital address. Had Mr. Ruhiu not filed his taxes, he would not have received the February 5, 2021 letter regarding his Economic Impact Statement at the marital address.

39. Eighth, USCIS provided that the years' worth of Citizen Bank statements that the Plaintiffs submitted could not demonstrate commingling of assets because the debits were for Eversource, and the checks were for medical bills, but no bills were provided to match the charges. USCIS also stated that there were cash deposits to that account that were unaccounted for. Ms. Mwicigi provided in her affidavit submitted with the NOID response that they opened the account together around the time of the wedding to start paying their bills together. She further explained that they split the rent, Xfinity, and Eversource bills 50/50. Mr. Ruhiu would deposit cash into the account, and she paid the bills. Mr. Ruhiu also confirmed this in his affidavit, stating that Ms. Mwicigi is better at finances and he gives her cash to pay the bills from their account.

40. USCIS also noted that there was a $1,000 charge to Bridgewater State University from the Citizen Bank account in October of 2018. Ms. Mwicigi explained that her mother had given her the money to give to Ms. Mwicigi's niece, who attended the university, to help with school payments. Ms. Mwicigi paid for some books for her niece. Ms. Mwicigi does not have further proof than her testimony that the funds were provided to her by her mother for her niece. Even if she did, the supposed documentation would not have any positive or dispositive effect on the nature of Mr. Ruhiu and Ms. Mwicigi's relationship.

41. Next, while USCIS had initially given positive weight to the joint American Express account, which had authorized Ms. Mwicigi, Mr. Ruhiu, and Ms. Mwicigi's mother to make purchases, in the NOID, it later dismissed that finding and determined the statements do not express commingling of marital finances simply because Ms. Mwicigi spent more money than Mr. Ruhiu did. As stated previously, Ms. Mwicigi handled all of the finances, and earns more than her husband, which is why she spends more than he does. Many of the charges on the account are for subscriptions that they share, including, Apple, Spotify, Amazon, Uber Eats and Lyft, and other

food and household expenses for both of them. The Decision also noted that several of the expenses on the statement were in the same city on the same dates, meaning that when they travelled together, they each used their credit cards in San Francisco, California, or New York. Ms. Mwicigi pays for the credit card from her own bank account, which is why there was not proof of the credit card payments from their joint account.

42. USCIS also claimed that the property lease was insufficient to establish the claimed relationship because there was no evidence of paying utilities, aside from the cable, and there was no evidence of paying the rent. This is erroneous for a couple reasons. First, USCIS had already identified payments from the Citizen Bank account for Eversource, which was the electricity provider. Second, Ms. Mwicigi explained in her affidavit submitted with the NOID Response, that they paid for the rent through wire transfers. Third, USCIS conducted an administrative investigation and talked with the property manager, who confirmed the lease's validity. The property manager did not offer any information to suggest that the occupants never paid their rent. In fact, if they had not paid their rent, they would not have been able to renew their lease term; instead, they would have been evicted from the home. Ms. Mwicigi testified in her affidavit that she was excited to make her space their space when they got married.

43. As a result of these allegations, USCIS denied the Plaintiffs' I-130 Petition and Ms. Mwicigi's I-485 Application, concluding that the beneficiary is not eligible for the requested benefit because she failed to establish the claimed relationship.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

44. It is a generally recognized prudential requirement of administrative law that administrative remedies should be exhausted before an appeal is filed in federal court. However, the "INA does not require aliens to appeal denials of spousal immigration petitioners to the BIA

before seeking relief in federal court." *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). *See also* 8 C.F.R. § 103.3(a)(ii) (providing that a party "may" appeal to the BIA). *Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993); *Ore v. Clinton*, 675 F.Supp.2d 217, 223 (D. Mass 2009) (affirming that in cases seeking judicial review pursuant to the APA, a plaintiff is not required to exhaust non-mandatory administrative remedies).

## COUNT ONE
### (Violation of The Administrative Procedure Act)

45. Plaintiffs repeat, allege, and incorporate the foregoing paragraphs as if fully set forth herein.

46. Plaintiff has been aggrieved by agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et. seq.* The USCIS Decision denying Plaintiffs' I-130 Petition violated the governing statute and regulations, is arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with the law.

47. The decision denying Plaintiffs' I-130 Petition was improper, as USCIS based its conclusions on conjecture and speculation instead of fact.

48. The Decision denied Plaintiffs' I-130 Petition on the basis that Plaintiffs had failed to show, by a preponderance of the evidence, that the marriage was legally valid and bona fide at its inception and "not entered into for the purpose of evading the immigration laws." *Matter of Laureano*, 19 I&N Dec. 1, 3 (BIA 1983). USCIS provided examples of evidence sufficient to prove the validity of the marriage including "proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." This conclusion was erroneous as Plaintiffs had submitted sufficient evidence. Mr. Ruhiu is listed as the beneficiary on Ms. Mwicigi's life insurance policy, but USCIS claimed the policy did "not

assist in establishing the claimed relationship" in its Decision. The Plaintiffs submitted their property lease for September 2019 to August 2020, executed on May 30, 2018, but USCIS discounted that evidence because they did not submit proof of paying the rent for the lease agreement. Plaintiffs also submitted tax returns for each calendar year since their marriage, but USCIS offered no weight to the returns because they were not IRS tax transcripts, and therefore were not proof that the returns were indeed filed rather than simply prepared. Plaintiffs submitted statements from their joint account at Citizen Bank, but that evidence was also not offered any evidentiary value because the Eversource bills were not included in their submission despite the debits on the accounts. Lastly, testimony about the relationship, wedding, shared residence, and experiences is also relevant to proving the validity of the marriage, but USCIS discounted that, claiming after-the-fact evidence in testimony is only marginal weight as evidence.

49. Defendants acted arbitrarily, capriciously, and contrary to law in violation of the Administrative Procedures Act by failing to approve Plaintiffs' I-130 Petition.

50. Plaintiffs have exhausted all administrative remedies available to them as of right.

51. Plaintiffs have no other recourse to judicial review other than by this action.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs pray that this Court grant the following relief:

a. Declare that USCIS denial of Plaintiffs' Form I-130 Immigrant Petition for Alien Relative is unlawful, order USCIS to readjudicate and approve the I-130 Petition in a proper and lawful manner;

b. Declare that USCIS's conclusion that Plaintiffs had not proved by a preponderance of the evidence that their marriage was bona fide and not entered into for the purpose of

evading immigration laws violated the statute, governing regulations, and Board of Immigration Appeals precedent;

c.  Declare that there is not substantial and probative evidence supporting a denial of the I-130 Petition;

d.  Award attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504; and,

e.  Order any further relief this Court deems just and proper.

Dated: August 12, 2021                                  Respectfully Submitted,

*/s/ Rachel L. Rado*

Rachel L. Rado, Esq. | BBO #: 682095
Attorney for the Plaintiffs
Law Offices of Rachel L. Rado
100 State Street, 3rd Floor
Boston, MA 02109
Tel: 617-871-6030
Email: rachel@rachelradolaw.com